**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANA SU EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15-cv-00817-AGF |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the

Commissioner of Social Security finding that Plaintiff Dana Su Edwards was not disabled

and, thus, not entitled to disability insurance benefits under Title II of the Social Security

Act, 42 U.S.C. §§ 401-434, or supplemental security income under Title XVI of the Act,

42 §§ 1381-1383f.  For the reasons set forth below, the decision of the Commissioner

will be affirmed.

**BACKGROUND**

Plaintiff, who was born on May 1, 1967, protectively filed applications for

benefits on January 30, 2012, alleging a disability onset date of November 21, 2011,[1] due

to depression, anxiety, spinal stenosis, and arthritis in her left knee and back.  (Tr. 152-

55, 225.)  After Plaintiff's applications were denied at the initial administrative level, she

---

[1]     Plaintiff's applications initially alleged a disability onset date of October 1, 2005,
but Plaintiff later amended her onset date to November 21, 2011.  (Tr. 10.)

requested a hearing before an Administrative Law Judge ("ALJ"), and such a hearing was held on September 25, 2013. By decision dated October 21, 2013, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in the Commissioner's regulations. Based on this RFC, the ALJ found that Plaintiff could not perform her past relevant work but that, pursuant to the Commissioner's Medical-Vocational Guidelines found at 20 C.F.R. Pt. 404, Subpart P, Appendix 2, she was not disabled. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on March 23, 2015. Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ erred by using the Medical-Vocational Guidelines to find Plaintiff not disabled because Plaintiff's nonexertional impairments limited her ability to perform the full range of exertional work described in the Commissioner's regulations. Specifically, Plaintiff argues that the ALJ's RFC determination did not properly account for her nonexertional impairments of obesity and depression. Plaintiff further argues that the ALJ's RFC determination is not supported by substantial evidence in the record because it did not include all medically established physical restrictions, as demonstrated by the objective medical evidence and Plaintiff's subjective complaints; and was not based on a medical source that specifically addressed Plaintiff's work-related limitations and abilities.

**Medical Record**

The Court adopts Plaintiff's unopposed Statement of Uncontroverted Medical Facts (Doc. No. 20-1) as supplemented by Defendant's unopposed Statement of Additional Facts (Doc. No. 23-2). Together, these facts present a fair and accurate summary of the medical record. The Court will discuss specific facts as they are relevant to the parties' arguments.

**Evidentiary Hearing of September 25, 2013 (Tr. 354-68)**

Upon questioning by her attorney, Plaintiff testified that she was 46 years old on the date of the hearing and that she graduated high school but did not go further in school or complete any vocational training. Plaintiff testified that she lived in a two-story house with her husband and two children, aged 23 and 16, and that she used the steps twice a day, in the morning and at night. Plaintiff testified that she last worked in October 2008, as a seamstress, when she took short-term disability for a pinched nerve in her back, after which her employer would not take her back. Plaintiff testified that she did not have health insurance but paid for medical treatment when she could "come up with the money." She testified that she could only stand for 15 minutes at a time and that she was in pain after sitting as a passenger in the car for the hour that it took to drive to the hearing.

Plaintiff testified that she did household chores, but her family helped; that she cooked for up to two hours at a time but kept a chair by the stove so she could sit when needed; and that she could lift a full gallon of milk but nothing heavier. Plaintiff testified that her depression sometimes caused her to stop doing housework or taking showers for

days at a time; that she attended church twice a week but otherwise did not leave the house much; that she first started seeing a physician, Javed Choudry, M.D., for mental health treatment on July 31, 2013; and that she took medication for her depression but still had trouble concentrating and focusing when stressed. Upon the final question by her counsel as to whether there was anything else she felt the ALJ should know about what had kept her from being able to work, Plaintiff answered "I don't think so." The ALJ did not ask Plaintiff any questions, and no vocational expert ("VE") was called to testify.

**ALJ's Decision of October 21, 2013** (Tr. 11-23)

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 21, 2011, the alleged disability onset date. The ALJ found that Plaintiff had the severe physical impairments of lumbar osteoarthropathy, anterolisthesis, canal stenosis, medical compartment narrowing in the left knee, and obesity, but that no impairment or combination of impairments met or medically equaled the severity of one of the deemed-disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ considered Plaintiff's mental impairments but found that they were not severe. Specifically, the ALJ found that the record did not establish that Plaintiff's alleged mental impairments significantly limited, or were expected to significantly limit, her ability to perform basic work-related activities. The ALJ referred to a May 2012 report Plaintiff made to the State agency, in which she stated that she had not seen a psychiatrist or psychologist as of her disability onset date. (Tr. 188.) The ALJ also noted that subsequent records did not demonstrate an increase in mental health treatment, and

4

that although Plaintiff was previously prescribed Cymbalta for depression and had been on and off medication for years, she reported to Dr. Choudry on July 31, 2013 that she had not taken depression medication for nine months and that her depression worsened during that time. Dr. Choudry subsequently prescribed Prozac but otherwise noted that Plaintiff's general appearance was normal and she did not have any suicidal or homicidal ideation, hallucinations, or delusions. (Tr. 337.)

The ALJ further found Plaintiff's mental impairments were not severe because Plaintiff had only mild limitations in activities of daily living; social functioning; and concentration, persistence, and pace; and no episodes of decompensation that lasted for an extended duration (two weeks or more).[2] The ALJ referred to a psychiatric review technique form completed by Robert Cottone, Ph.D., on March 2, 2012, which supported these findings and, in fact, found that Plaintiff was less restricted in that she had no limitation in activities of daily living or social functioning. (Tr. 295-305.) The ALJ also noted that nothing else in the record indicated more than mild limitations in the above areas, and that neither Plaintiff's treatment records nor the ALJ's observation of Plaintiff at the hearing indicated any such limitations.

---

[2]    Under the regulations, the ALJ evaluates the severity of mental impairments by rating the claimant's degree of limitations in four areas of functioning: (1) activities of daily living; (2) social functioning; (3) concentration persistence, or pace; and (4) episodes of decomposition. 20 C.F.R. § 404.1521 a(c)(3). When the degree of limitation in the first three functional areas is "none" or "mild" and is "none" in the area of decompensation, the impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

The ALJ then proceeded to assess Plaintiff's RFC and found that Plaintiff had the RFC to perform the full range of sedentary work defined in the Commissioner's regulations, in that Plaintiff was able to occasionally lift and carry up to 10 pounds, stand or walk at least two hours during an eight-hour work day, and sit approximately six hours during an eight-hour work day. In making these findings, the ALJ discussed the medical record in detail and found that it supported some limitations, but not to the extent alleged by Plaintiff. The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms, Plaintiff's statements and testimony concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.

Specifically, the ALJ noted that Plaintiff's spinal impairments dated back to 2008, when Plaintiff was still working, and the medical records did not indicate a significant increase in spine-related symptoms since then. The ALJ found that the fact that Plaintiff worked with her spinal condition, coupled with the absence of evidence of deterioration in that condition, demonstrated that this condition was not disabling. The ALJ also summarized Plaintiff's treatment by Dr. Choudry, including Plaintiff's reports of pain and weakness on the right side, and evidence of knee impairments. The ALJ noted that despite her knee impairments, Plaintiff was released back to work by a physician's assistant as of April 14, 2012 (Tr. 312), which was inconsistent with Plaintiff's allegations of disability.

The ALJ also considered a consultative examination performed by Raymond Leung, M.D., on April 21, 2012, in which Dr. Leung observed that Plaintiff had a normal

gait; she was alert and oriented; her memory appeared intact; although she had decreased range of motion in her knees, she could walk 50 feet unassisted, tandem walk, hop, heel walk, toe walk, and squat; her back was nontender; her straight-leg raising was limited bilaterally, but she had no muscle atrophy or spasms and did not require a cane; her bilateral lower extremity strength was 4+/5, and she had full upper extremity strength; she showed full range of motion in the lumber spine; and she had no difficulties getting on and off the exam table. Dr. Leung diagnosed Plaintiff with lumbar stenosis, left knee arthritis, and morbid obesity in light of her height (62 inches) and weight (239 pounds). (Tr. 323-25.)

Finally, the ALJ considered the impact of Plaintiff's obesity on her other impairments but found that there was no persuasive evidence that Plaintiff's obesity diagnosis resulted in significantly reduced respiratory capacity, skin disorders, edema, huge calluses on Plaintiff's feet, or significant cardiac-related impairments. The ALJ also noted that no treating physician had reported that Plaintiff's obesity resulted in severe symptoms or limitations of function.

The ALJ found that Plaintiff was unable to perform her past relevant work as a seamstress. The ALJ then considered Plaintiff's age, education, and work experience and applied the Medical-Vocational Guidelines to find that Plaintiff was not disabled.

## DISCUSSION

### Standard of Review and Statutory Framework

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Pate–Fires v. Astrue*, 564

F.3d 935, 942 (8th Cir. 2009). In determining whether the evidence is substantial, the

Court considers evidence that both supports and detracts from the Commissioner's

decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial

evidence supports the decision, the Court may not reverse it merely because substantial

evidence exists in the record that would support a contrary outcome or because the court

would have decided the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022

(8th Cir. 2002). A court should "disturb the ALJ's decision only if it falls outside the

available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)

(citation omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in

substantial gainful activity which exists in the national economy, by reason of a

medically determinable impairment which has lasted or can be expected to last for not

less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated

regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation

process to determine disability. The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the

Commissioner decides whether the claimant has a "severe" impairment or combination of

impairments. A severe impairment is one which significantly limits a person's physical

or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). As discussed

above, a special technique is used to determine the severity of mental disorders. This

technique calls for rating the claimant's degree of limitations in four areas of functioning:

activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If so, the claimant is not disabled. If he cannot perform his past relevant work, the burden of producing evidence shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors—age, education, and work experience. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). "However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Hensley v. Colvin*, No. 15-2829, 2016 WL 3878219, at *3 (8th Cir. July 18, 2016) (quotation omitted).

**Medical-Vocational Guidelines**

Plaintiff argues that the ALJ erred in applying the Medical-Vocational Guidelines because her nonexertional impairments of obesity and depression diminished her RFC to perform the full range of activities listed in the Guidelines. Plaintiff thus argues that the ALJ should have considered a VE's testimony.

"Whether the Guidelines may be used [in determining disability] depends on whether the claimant's limitations are exertional or nonexertional. An exertional limitation 'affects one's ability to meet the strength demands of a job' such as 'sitting, standing, walking, lifting, carrying, pushing, and pulling.'" *Crawford v. Colvin*, 809 F.3d 404, 409–10 (8th Cir. 2015) (quoting 20 C.F.R. § 404.1569a(a)). Nonexertional limitations include mental impairments such as "anxiety, depression, difficulty concentrating, [and] memory deficiencies," as well as obesity. *Id.* (citing 20 C.F.R. § 404.1569a(c)(1)). "If the limitations are exertional, the ALJ may rely solely on the Guidelines," but "[i]f the limitations are nonexertional, . . . the Guidelines can be used only if the record as a whole shows that the nonexertional impairment does not diminish the claimant's RFC to perform the full range of activities listed in the Guidelines." *Id.* (citations omitted).

Upon review of the record, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's nonexertional limitations of obesity and depression did not restrict Plaintiff's ability to perform the full range of sedentary work, and, therefore, the ALJ was permitted to rely upon the Guidelines to find Plaintiff not disabled. Plaintiff has not pointed to anything in the record that contradicts the ALJ's finding that she was able to perform the full range of sedentary work, notwithstanding her obesity and her non-severe mental impairment, and the Court finds that substantial evidence in the record supports that finding.

"[T]he Social Security Administration has never stated that morbid obesity automatically prevents a person from working, especially when the work is sedentary."

*Id.* (citation omitted).  Likewise, "[w]here an ALJ has determined that a claimant's mental impairment is non-severe, . . . it may be appropriate for the ALJ to rely upon the Guidelines."  *Booth v. Astrue*, No. 4:11CV941 CDP, 2012 WL 4464860, at *10 (E.D. Mo. Sept. 26, 2012).

Here, the record discloses that, despite her obesity, Plaintiff had a normal gait and could, for example, walk 50 feet without assistance, hop, squat, and lift at least a full gallon of milk.  With respect to Plaintiff's mental impairment, Plaintiff does not challenge the ALJ's finding that this impairment was not severe, and in any event, that finding was supported by substantial evidence, including the absence of ongoing psychiatric treatment and the lack of medical records indicating serious mental health issues.  *See Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) ("The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in Roberts's mental capabilities disfavors a finding of disability.") (citation omitted).  Nor does Plaintiff point to any evidence in the record suggesting that her non-severe mental impairment limited her ability to perform the full range of sedentary work.  Because substantial evidence supports the ALJ's finding that Plaintiff's nonexertional impairments did not diminish her RFC to perform the full range of sedentary activities, the ALJ did not err in relying solely on the Guidelines to find Plaintiff not disabled.

**RFC Determination**

Plaintiff's remaining challenges to the ALJ's RFC determination are that it did not include all medically established restrictions, as demonstrated by the objective medical

evidence and Plaintiff's subjective complaints; and it was not based on a medical source

that specifically addressed Plaintiff's work-related limitations and abilities.[3]

As discussed above, the ALJ summarized the objective medical evidence in detail

and found that it supported some limitations, but not to the extent alleged by Plaintiff.

The ALJ also properly discredited Plaintiff's subjective complaints.  In determining that

Plaintiff's complaints were not entirely credible, the ALJ appropriately relied on

Plaintiff's work history while under the same or similar impairments, the absence of

evidence of significant deterioration in her condition, and the objective medical evidence

indicating abilities inconsistent with Plaintiff's testimony.  *See Van Vickle v. Astrue*, 539

F.3d 825, 830 (8th Cir. 2008) (holding that an ALJ may discount a claimant's subjective

complaints if there are inconsistencies in record as a whole); *Goff v. Barnhart*, 421 F.3d

785, 792 (8th Cir. 2005) ("The fact that Goff worked with the impairments for over three

years after her strokes, coupled with the absence of evidence of significant deterioration

in her condition, demonstrate the impairments are not disabling in the present."); *Baldwin*

*v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) ("The credibility of a claimant's

subjective testimony is primarily for the ALJ to decide, not the courts."); *Johnson v.*

*Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) ("The ALJ's personal observations of the

claimant's demeanor during the hearing is completely proper in making credibility

determinations.").

---

[3]     Plaintiff also suggests that the ALJ failed to develop the record because he did not
ask Plaintiff any questions during the hearing.  The Court agrees with Defendant that the
record was fully developed by Plaintiff's attorney's questioning, including the attorney's
final question, which gave Plaintiff the opportunity to tell the ALJ anything else she felt
he should know about her impairments.

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, No. 15-2829, 2016 WL 3878219, at *3 (8th Cir. July 18, 2016) (internal quotations and citations omitted). As discussed above, the ALJ properly considered and weighed the available medical evidence, in addition to Plaintiff's testimony and work history, in determining Plaintiff's RFC. Plaintiff's argument that the ALJ's RFC is not supported by medical evidence is unfounded. The ALJ specifically referred to Dr. Leung's consultative examination, Dr. Choudry's treatment notes, and Plaintiff's other medical records to determine that Plaintiff could occasionally lift and carry up to 10 pounds, stand or walk at least two hours during an eight-hour work day, and sit approximately six hours during an eight-hour work day. In short, the Court finds that the ALJ properly made the RFC determination based on medical evidence and the record as a whole, and substantial evidence supports the ALJ's decision.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

**AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 1st day of September, 2016.